In re LESTER B. GREENBERG, D.D.S., P.A. d/b/a Pasco Dental Center, d/b/a Pasco Dental Center Bayonet Point, Debtor.

LIBERTY SAVINGS & LOAN
ASSOCIATION, Plaintiff,

v.

LESTER B. GREENBERG, D.D.S., P.A. and Fortune Federal Savings & Loan Association, Defendant.

Bankruptcy No. 86–183.
Adv. No. 87–107.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 24, 1987.

Hywel Leonard, Tampa, Fla., for plaintiff.

Paul Probst, Belleair Bluffs, Fla., for Fortune Federal.

Russell Blain, Tampa, Fla., for Greenberg.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing with notice to all parties in interest upon Motions for Summary Judgment filed by Liberty Federal Savings & Loan Association (Liberty), the Plaintiff in this adversary proceeding and by Fortune Savings Bank, f/k/a Fortune Federal Savings & Loan Association (Fortune), one of the Defendants in this adversary proceeding.

The Motions under consideration seek a determination by this Court as to the priority of liens held by Liberty and Fortune in certain property of the Debtor. Lester B. Greenberg (Debtor), the Debtor in this Chapter 11 case and the other Defendant in this proceeding, has taken no position as to the dispute between Liberty and Fortune. The Court has considered the Motions, together with the record, has heard arguments of counsel, and finds the undisputed facts relevant to a resolution of the matters under consideration to be as follows:

On September 7, 1983, the Debtor and Liberty entered into a loan agreement whereby Liberty agreed to lend the Debtor the sum of $212,000.00. As collateral, the Debtor executed a security agreement in favor of Liberty which granted a security interest in the following property:

All personal property including, but not limited to, all equipment, machinery, tools, furniture, fixtures, leasehold improvements, accounts receivable, inventory, and contract rights, and including any and all insurance proceeds due Borrower, whether collateral or otherwise, located at Store Room 1–A, Bayonet Square, Bayonet Point, Florida. Also including the telephone system acquired from Bay Area Telephones and Comminications, Inc. and an IBM Electronic Model 85 Typewriter both located at Pasco Dental Center, 530 U.S. Hwy. 19 North, New Port Richey, Florida, 33552. Further including a sign purchased from A–OK Sign Co. to be placed at Bayonet Square Shopping Center, Bayonet Point, Florida

. . .

Further, as set forth in the loan agreement (Def's Exh. 1) the Debtor assigned to Liberty two promissory notes in the amount of $148,201.60 each from one E.J. Hutchinson, D.D.S., P.A., and Paul Schmidt, D.D.S., A.A., granted Liberty a first security interest in a telephone system and an IBM Electronic Model 85 typewriter, and conditionally assigned the name of "Pasco Dental Center at Bayonet Point" in the event the Debtor defaulted on any terms of the loan agreement. (Def's Exh. 1)

On September 7, 1983, the Debtor executed a security agreement in favor of Liberty, and Liberty properly filed its UCC–1 Financing Statement on October 7, 1983.

On September 9, 1983, in need of more money, the Debtor executed a business loan agreement, a variable interest note in the amount of $90,000.00 (Def's Exh. 4), and a security agreement in favor of Fortune. The security agreement granted Fortune an interest in "all equipment purchased for Pasco Dental Center from Healthco Dental Supply to furnish the Bayonet Point Office" (Def's Exh. 5). It should be noted that this is the same equipment encumbered by the security interest of Liberty. Fortune properly filed its UCC–1 Financing Statement on October 24, 1983.

The transaction around which the dispute between Liberty and Federal revolves occurred on June 20, 1984, when the Debtor executed in favor of Liberty a second promissory note in the amount of $45,000.00, which was accompanied by a Modification and Consolidation Agreement which provided in pertinent part as follows:

1. The promissory note executed by the borrower, simultaneously herewith, is hereby modified and consolidated with the promissory note dated September 7, 1983, and above referenced, and borrower hereby acknowledges that the total

principal balance of the two notes is $233,000.00 ...

3. It is agreed that the collateral secured under both notes are hereby consolidated so that said security shall constitute collateral for both obligations ...

(Def's Exh. 8)

Simultaneously, the Debtor executed a security agreement in accordance with the foregoing which granted a security interest in the following:

All of the personal property, including, but no limited to equipment, tools, furniture, fixtures, leasehold improvements, accounts, inventory, contract rights, and all other personal property which may be acquired by "Borrower" in the future and contained on said premises, or which may be purchased and be on said premises, located at:

Storeroom 1A, Bayonet Square
Shopping Center Bayonet Point
Florida 33567

together with all increases, accessories, equipment, and special tools now or hereafter affixed to any or any part thereof, or used in connection with any thereof, and all replacements of all or any part thereof

(Def's Exh. 9)

The Debtor and Liberty executed UCC–1 Financing Statements, which were properly filed on August 6, 1984 (Def's Exh. 11), and August 16, 1984 (Def's Exh. 10).

It is the contention of the parties that there are no issues of material fact in dispute and therefore the issues may be decided as a matter of law. Based on the facts that are without dispute, this Court is satisfied that this matter should be resolved by summary judgment, and, therefore, the only issue to be addressed by this Court is the relative priorities of Liberty and Federal regarding the equipment of the Debtor. Facially, the resolution of this issue appears quite simple. As Liberty filed its UCC–1 Statement before Fortune filed UCC–1 Statement, it would appear that Liberty's lien is superior to Fortune's.

However, it is the contention of Fortune that the 1983 transaction between the Debtor and Liberty merged with the 1984 transaction, making the 1984 modification tantamount to a novation. This being the case, so argues Fortune, the new 1984 transaction was secured only by the security agreement executed in June, 1984, and therefore is inferior to the lien of Fortune. Further, Fortune argues that in the event the Court determines the lien of Liberty to be superior to that of Fortune, Liberty should be directed to satisfy its interest first from the collateral not also secured by Fortune (i.e., the phone system, the IBM typewriter and the sign) pursuant to the doctrine of marshalling.

Liberty contends in opposition that neither the Debtor nor Liberty intended the 1984 transaction to be a novation. Further, Liberty argues that the original security interest is superior to the interest of Fortune simply because that interest was perfected by Liberty prior in time to Fortune's perfection of its interest in the same collateral.

Whether a novation occurred at the time of the June, 1984, transaction between the Debtor and Liberty depends on whether the parties intended the new agreement to be the "discharge of a valid existing obligation by the substitution of a new valid obligation," *Taines v. Capital City First National Bank,* 344 So.2d 273, 276 (Fla. 1st DCA 1977) and its existence is controlled by the intent of the parties. *Don L. Tullis and Associates, Inc., v. Benge,* 473 So.2d 1384 (Fla.App. 1st DCA 1985). It is now well established that a novation consists of an agreement extinguishing an old debt and another substituting a new debt in place of the old debt. *Id.* As with all contracts, the new agreement must be based on adequate consideration. *Miami National Bank v. Forecast Construction Corp.,* 366 So.2d 1202 (Fla. 3rd DCA 1979).

Based on the foregoing, this Court is satisfied that the June 1984 transaction did not constitute a novation, as it is clear that the Debtor and Liberty did not intend the new agreement to be a novation. There is no evidence that Liberty intended to extinguish the debt of $212,000.00, and in support of this conclusion, it is important to

note that Liberty never filed a UCC–3 statement extinguishing the original UCC–1 Statement. Yet another, and probably the most important indicia of the fact that the June 1984 transaction was not a novation, is the express language of the June 20, 1984, security agreement which states in part that the Bayonet Point equipment was

> "to secure the payment of a promissory note in the amount of $45,000.00 executed by the Borrower in favor of the Secured Party, said note of even date herewith and including any and all extensions thereof, *and further secured by that certain collateral securing a promissory note dated September 7, 1983, between the parties hereto in the principal amount of $212,000.00.*" (emphasis added)

Clearly, the prior debt of $212,000.00 was not extinguished. It would certainly be difficult to believe that a lender would give up a superior interest in property simply to extend new funds to the Debtor.

■ Based on the foregoing, this Court is satisfied that as to the collateral described in the 1983 UCC–1 statement and security agreement, Liberty is in a position of first priority. As to the Bayonet Point equipment also secured by Fortune, Fortune is in a secondary position to Liberty. Further, to the extent the doctrine of marshalling is not academic in this situation, Liberty should attempt to satisfy its interest through the telephone system, the IBM typewriter, and the sign at the Bayonet Square Facility before it attempts to satisfy its interest through the equipment.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by Liberty by, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by Fortune be, and the same is hereby, denied.

A separate Final Judgment will be entered in accordance with the foregoing.